[Cite as *State v. Morgan*, 2025-Ohio-4572.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                          Court of Appeals No.  L-24-1279

     Appellee                                     Trial Court No.  CR-24-1456

v.

Kyle Morgan                                          **DECISION AND JUDGMENT**

     Appellant                                    Decided: September 30, 2025

* * * * *

Julia R. Bates, Lucas County  Prosecuting Attorney, and
Lorrie J. Rendle, Assistant Prosecuting Attorney, for appellee.

Laurel A. Kendall, for appellant.

* * * * *

**ZMUDA, J.**

{¶ 1} Appellant, Kyle Hassan Morgan, appeals from the judgment of the Lucas County Court of Common Pleas convicting him of one count of aggravated vehicular homicide and one count of failure to stop after an accident, sentencing him to two prison terms to be served consecutively, suspending his driver's license for his lifetime for the

first count and for a period of three years for the second count, and imposing the costs of supervision. Appellant challenges the two suspensions of his driver's license and the order imposing costs of supervision. For the reasons that follow, the portion of the trial court's judgment imposing the license suspensions is affirmed and the portion of the trial court's judgment imposing costs of supervision is vacated.

## I. Facts and Procedural History

{¶ 2} On March 25, 2024, the Lucas County Grand Jury indicted appellant on one count of aggravated vehicular homicide while under a suspension of his driver's license in violation of R.C. 2903.06(A)(2)(a) and (B), a second-degree felony (count 1); and one count of failure to stop after an accident in violation of R.C. 4549.02(A)(1), (A)(2), (B)(1), and (B)(3)(a), a third-degree felony (count 2).

{¶ 3} The indictment's charges arose from an incident on June 20, 2023 in Toledo, Ohio in which appellant hit a pedestrian with his vehicle and then drove away from the scene of the accident. Appellant, who was speeding during the accident and was on electronic monitoring for a previous offense, attempted to conceal his involvement in the accident. The pedestrian later died from the injuries he sustained. Appellant initially pled not guilty to the charges.

{¶ 4} On September 17, 2024, pursuant to a plea agreement, the State amended count 1, aggravated vehicular homicide, to omit reference to appellant's suspended license at the time of the accident, making the offense a third-degree felony rather than a second-degree felony. Appellant changed his plea to no contest to both the amended

2.

count 1 and to count 2.  Following a plea colloquy, the trial court accepted appellant's no contest plea and found him guilty on both counts.

{¶ 5} On October 31, 2024, appellant appeared for sentencing.  The trial court sentenced appellant to a prison term of 48 months as to count 1 and a prison term of 12 months as to count 2, to be served consecutively for an aggregate prison term of 60 months.  In addition, the court imposed a lifetime driver's license suspension as to count 1 and a three-year driver's license suspension as to count 2.  Although the court stated the length of each suspension, it did not specify a class of suspension.  The court also stated the following:

> The Court has considered your present and future ability to pay, including your age, health, employment history, ability to work and education and the Court finds that you may reasonably be expected to pay for all or part of the applicable court costs and you are therefore ordered to pay the costs of prosecution, confinement and supervision.

{¶ 6} On the same day as appellant's sentencing hearing, the trial court issued a sentencing order imposing the 60-month aggregate prison term as well as the lifetime license suspension for count 1 and the three-year license suspension for count 2.  The order also stated the following:

> The Court has considered the defendant's present and future ability to pay and after considering all relevant factors pursuant to R.C. 2941.51(D), finds that the defendant has, or may reasonably be expected to have, the means to pay for all or part of the applicable court costs and fees and is therefore ordered to pay the applicable costs of prosecution and supervision pursuant to R.C. 2947.23, 9.92(C), 2929.18(A), and 2951.021.

{¶ 7} Appellant filed a notice of appeal on November 27, 2024.  The State filed a notice of cross-appeal on December 9, 2024.

3.

**{¶ 8}** On December 19, 2024, the court issued a nunc pro tunc judgment entry to reflect that appellant was given post-release control advisements and notice of appellate rights during his October 31, 2024 sentencing hearing. The December 19, 2024 nunc pro tunc judgment entry is identical to the October 31, 2024 entry in all other respects. In its March 24, 2025 brief, the State voluntarily dismissed its cross-appeal, explaining that the trial court's nunc pro tunc entry clarifying post-release control rendered the State's basis for its cross-appeal moot. This court granted the State's motion to dismiss its cross-appeal on April 21, 2025.

## II. Assignment of Error

**{¶ 9}** Appellant asserts the following assignments of error for review:

1.  The trial court committed plain error, or in the alternative, abused its discretion, when it imposed a Class 1 license suspension pursuant to R.C. 2903.06(B)(3) which specifies a Class 2 suspension pursuant to R.C. 2903.06(A)(2).

2.  Similarly, the trial court committed plain error, or in the alternative abused its discretion, when it suspended Appellant's license for three years as to Count 2 of the indictment, when a three year suspension could be ordered pursuant to a Class 2, 3, 4 or 5 license suspension.

3.  The trial court abused its discretion when it imposed "all or some of the costs of supervision" in the Judgment Entry of sentencing, but without a finding on the record of Appellant's ability to pay.

## III. Law and Analysis

## A. Appellant's License Suspensions

**{¶ 10}** Appellant's first and second assignments of error concern the trial court's suspensions of his license. Appellant does not challenge the time period of the license

4.

suspensions nor does he argue that his license could not be suspended. Instead, appellant contends that the trial court's failure to identify a specific classification for his license suspensions was plain error or an abuse of the trial court's discretion. In support, appellant claims that because the trial court did not identify a specific classification for his two suspensions, he may be prejudiced if he later seeks modification of his license suspensions.

{¶ 11} An appellate court reviews a trial court's suspension of a driver's license under R.C. 2953.08(G)(2). *State v. Howard*, 2020-Ohio-3229, ¶ 9 (12th Dist.). R.C. 2953.08(G)(2) provides that to "increase, reduce, or otherwise modify a sentence," an appellate court must "clearly and convincingly find either …that the record does not support the sentencing court's findings" or "the sentence is otherwise contrary to law." *State v. Jones*, 2024-Ohio-1083, ¶ 13.

{¶ 12} A mandatory license suspension applies to both aggravated vehicular homicide and failure to stop after an accident. R.C. 2903.06(B) and 4549.02(B)(4). For aggravated vehicular homicide, the court must impose a class one suspension if the offense is a second-degree felony and a class two suspension if the offense is a third-degree felony. R.C. 2903.06(B)(3). For failure to stop, the court must impose a class five suspension. R.C. 4549.02(B)(4).

{¶ 13} The time period for a license suspension differs based on the class of suspension, and the different time ranges for each class are contained in R.C. 4510.02(A). Relevant to this case, that statute provides that for a class one suspension, a trial court

5.

must impose a lifetime suspension. R.C. 4510.02(A)(1). A class two suspension may range anywhere from three years to a lifetime suspension. R.C. 4510.02(A)(2). Finally, the time period for a class five suspension may range from six months to three years. R.C. 4510.02(A)(5). Notably, the ranges for the time periods of the different classes of suspension have some overlap. For example, a court may impose a lifetime suspension for either a class one suspension or a class two suspension. R.C. 4510.02(A)(1) and 4510.02(A)(2). Similarly, a three-year suspension could be imposed for either a class two suspension or a class five suspension. R.C. 4510.02(A)(2) and 4510.02(A)(5).

{¶ 14} Here, for count one, because appellant was convicted of a third-degree felony for aggravated vehicular homicide, the court was required to impose a class two suspension, and therefore the court could impose a suspension ranging between a three-year suspension to a lifetime suspension. R.C. 4510.02(A)(2). The trial court did impose a lifetime suspension as to count one, within the permissible range of a class two suspension.

{¶ 15} Likewise, as to count two, failure to stop after an accident, the trial court was required to impose a class five suspension, so appellant's license could be suspended for a time period ranging between six months and three years. R.C. 4510.02(A)(5). The trial court imposed a three-year suspension as to count two, so the suspension was within the permissible range of a class five suspension.

{¶ 16} Appellant cites no legal authority, nor can this court identify any such authority, to support the proposition that a sentencing court must identify the specific

6.

class of license suspension when imposing a sentence suspending an offender's license that is within the appropriate statutory time range. Moreover, appellant's claim that he may be prejudiced by the trial court's failure to identify the class of his suspension also has no basis in law. Though R.C. 4510.54, which governs modifications of a suspension of 15 years or longer, does refer specifically to two classes of suspension—class one suspensions and class two suspensions—the classes of suspension are treated the same. The statutory requirements for modifications to a license suspension are based on the length of the suspension and the underlying offense, not the class of the suspension. R.C. 4510.54. Indeed, whether a lifetime suspension was imposed as a class one suspension or a class two suspension has no relevance when an appellant seeks modification of his suspension. *Id.* Nor is there any mention whatsoever of the class of suspension with respect to the modification of a three-year suspension. *Id.* Accordingly, the omission of the classification of appellant's two license suspensions has no impact on his ability to seek modification of his suspensions in the future.

{¶ 17} Appellant has identified no other basis from which we could clearly and convincingly find that the trial court's order imposing his license suspensions was contrary to law. Accordingly, appellant's first and second assignments of error are found not well-taken.

## B. Costs

{¶ 18} In his third assignment of error, appellant contends that the trial court erred in ordering him to pay the costs of supervision, which apply to offenders who are

7.

sentenced to community control. Appellant argues because he was sentenced to prison and he is not on community control, he is not subject to the cost of community supervision.

{¶ 19} In response, the State concedes that costs of supervision are inapplicable to appellant because he was sentenced to prison. Instead of the costs of supervision, according to the State, appellant must pay the costs of confinement. The State points out that at the sentencing hearing, after finding that appellant had the ability to pay, the court ordered appellant "to pay the costs of prosecution, confinement and supervision." The State argues that although the sentencing entry only imposed costs of supervision and not costs of confinement, the trial court properly imposed costs of confinement in the sentencing hearing, and the error in the sentencing entry can be cured if this court orders the trial court to issue a nunc pro tunc sentencing entry.

{¶ 20} Appellant is correct. The trial court did err in imposing costs of supervision when appellant was sentenced to a prison term. *State v. De La Rosa*, 2025-Ohio-2418, ¶ 17 (6th Dist.). We therefore find appellant's third assignment of error well-taken and vacate the imposition of costs of supervision.

{¶ 21} Contrary to the State's argument, however, we do not have jurisdiction to order the trial court to issue a nunc pro tunc entry ordering appellant to pay the costs of confinement. Appellant's third assignment of error challenges the trial court's imposition of the costs of supervision, not the costs of confinement. "Pursuant to App.R. 12(A)(1)(b), an appeal is determined based upon the assignments of error set forth in the

8.

briefs." *State v. Ridener*, 2025-Ohio-2845, ¶ 15 (6th Dist.). Because the costs of confinement are not germane to appellant's assignments of error, we cannot consider them in this appeal.

{¶ 22} Moreover, App.R. 3(C)(1) requires "an appellee who seeks to change the order" to file a notice of appeal. Here, the State, not appellant, seeks to change the order regarding the costs of confinement, and therefore the State was required to file a cross-appeal asserting its own assignment of error on that issue.[1] Because there is no state's cross-appeal raising the costs of confinement before us, we have no jurisdiction to consider the State's argument on that issue. *See State v. Cover*, 2021-Ohio-1303, ¶ 7 (8th Dist.) (explaining that an appellate court lacks jurisdiction to consider the State's arguments seeking a change to the trial court's order absent a timely filed cross-appeal).

**IV. Conclusion**

{¶ 23} For the foregoing reasons, the judgment of the Lucas County Court of Common Pleas is affirmed in part and reversed in part. The portion of the order imposing costs of supervision is vacated. Appellant and appellee are ordered to split the costs of this appeal pursuant to App.R. 24.

Judgment affirmed, in part, and reversed, in part.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

---

[1] Although the state did initially file its own notice of appeal, this court granted the state's motion to dismiss its cross-appeal. Furthermore, the state asserted in its brief that its dismissed cross-appeal related to post-release control, not the costs of confinement.

Thomas J. Osowik, J.
_____
                                                            JUDGE

Gene A. Zmuda, J.
_____
                                                            JUDGE

Charles E. Sulek, P.J.
_____
CONCUR.                                                     JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.